OPINION OF THE COURT
Herbert Kramer, J.
A hearing was held by me on the issues of suppression of physical evidence and statements. The location in question was the subject of continuing police investigation concerning the use of the premises as a chop shop. Officer Hanna, now deceased, was assigned to stake out the premises on various occasions. The premises were a one-story brick commercial building with two entrances, including one for people and one for vehicles. Hanna reported seeing vehicles coming in but, at times, none leaving. There was no evidence adduced as to any commercial signs or markings. The officers were previously on that site and discovered no indicia of criminality.
On the date of the arrest, Officer Hanna, accompanied by the witness, Detective Milau, was stationed across from the premises early in the day. Hanna looked through the space between the garage door and floor and discerned a license number, vehicle type and color. Computer verifica *533 tion indicated that the license plate number was similar to a vehicle which had been reported stolen.
Subsequently, the officers observed the defendant enter the premises by use of a key that he previously had on his person. The officers thereupon knocked on the door without response. Officer Hanna went to the rear of the premises, emerging shortly thereafter with the defendant in custody.
The officers thereupon removed the keys from the defendant’s person and by use of the key entered the premises. They observed automobiles, automobile parts and equipment therein.
No testimony was elicited at the hearing or in the affidavit signed by Hanna in support of a warrant indicating any evidence of illegality concerning any contents contained therein aside from the afore-mentioned license plate and stolen vehicle. There was a statement by Detective Milau that he observed “cut up” vehicles. No factual predicate exists for this conclusion or that this particular configuration of automobiles and parts was typical of or indicative of criminality.
The officers remained in the premises for one-half hour to secure same and to determine whether any danger to their physical safeties resided therein. Thereafter, Hanna went and secured a search warrant. The search pursuant to the warrant determined numerous parts of stolen automobiles.
CONCLUSIONS OF LAW
The issues presented herein include the efficacy of the initial sidewalk observation, the validity of the premises entry, and the police conduct at each stage of this event.
The People contend that the original observation was from the public sidewalk, did not involve a trespass and was in “plain view” of the police. This view misapprehends the “plain view” doctrine (Coolidge v New Hampshire, 403 US 443, reh den 404 US 874). The test balances the level of intrusion as against the level of expectation of privacy involved. Thus, in Michigan v Clifford (464 US _, 52 USLW 4056), the court reaffirmed the Coolidge doctrine and applied it to the suppression of evidence seized in the upstairs portions of a private dwelling where the original *534 entry was permitted to fire fighting needs and a determination of the cause of the fire in order to foreclose reignition. Once the cause was determined and other exigencies terminated, the expectation of privacy resumed. The sole reason for the search of the upstairs, in the court’s view, was to gather evidence of crime which required the securing of a warrant based on probable cause.
Similarly, in Oliver v United States (466 US _, 52 USLW 4425), the court reaffirmed the right to trespass where no right to privacy reposed and in violation of express notices, in open fields, beyond a premises and its curtilage.
Thus, we must conclude that only where an expectation of privacy exists, “plain view” is dependent on (1) the vantage point of viewing being lawful and arrived at lawfully and (2) the discovery being inadvertent (1 La Fave, Search and Seizure, § 2.2 [b]; 5 Zett, NY Crim Prac [Aug., 1984 Supp], § 36.5 [4], p 98; cf. People v Martinelli, 117 Misc 2d 310; People v Pace, 101 AD2d 336).
There is no question herein that the police were properly on the public sidewalk. However, this court finds the activity of the police purposeful, not inadvertent, and there existed a great expectation of privacy. There were no windows fronting the building, no doors were open, and there was no indication of invitation either personally or by a commercial sign (see People v Sciacca, 78 AD2d 545; Raettig v State, 406 So 2d 1273 [Fla]).
In this court’s view, People v Spinelli (42 AD2d 64) and People v Swanberg (16 NY2d 649), cited by the People, deal with seizure upon probable cause based on an informant’s tip and not a search (cf. People v Maldonado, 80 AD2d 563, which authorizes a search based on an additional factual predicate, including punched-out trunk locks and an informant’s tip which indicated criminality).
Further, this court finds that the entry into the premises following this arrest was not occasioned by any need to (1) secure the premises, or (2) assist in preserving the officers’ physical safety. There was no indication that all legitimate police purposes could not have been accomplished without entry. There is absolutely no evidence of the premises being entered prior to the defendant’s original entry. The *535 incredulous stated reasons for police entry are not based upon a reasonable regard for safety (see United States v Griffin, 502 F2d 959, cert den 419 US 1050; cf. People v Arnau, 58 NY2d 27).
Thus, this court must separately suppress the product of illegal entry into the premises; more specifically, all evidence of the nature and status of all vehicles and parts discerned after the street observation.
The court has considered the potential role of the inevitable discovery doctrine herein, but has determined, based upon the affidavit and search warrant and the testimony, that no basis for assessing illegality to the other vehicles and equipment found upon entry exists.*
This court holds that the results of the sidewalk viewing, the subsequent entry, and all statements made by the defendant are suppressed. This court further holds that there was an insufficient predicate for the issuance of the search warrant.

 The defendant never moved to controvert the search warrant. However, the affidavit in support of the warrant contains no factual statement of illegality other than that of the street sighting. Thus, the warrant is subject to the same infirmities as to all items other than the one vehicle and license plate previously specified.